JOURNAL ENTRY and OPINION
{¶ 1} On July 25, 2002, the relator, Theodore Jackson, commenced this mandamus action against the respondents, the Court of Common Pleas of Cuyahoga County, Judge Nancy McDonnell, Judge Brian Corrigan and the Clerk of Courts, Gerald E. Fuerst. Jackson seeks to compel the respondents to change two journal entries so that they "speak the truth" in the underlying case, State of Ohio v. Theodore Jackson, Cuyahoga County Common Pleas Court Case No. CR-397205. On August 1, 2002, the respondents moved for summary judgment, and on August 19, 2002, Jackson filed a combined summary judgment motion and brief in opposition. For the following reasons, this court denies Jackson's motion for summary judgment, grants respondents' motion for summary judgment, and denies the application for a writ of mandamus.
 {¶ 2} The requisites for mandamus are well established: (1) the relator must have a clear legal right to the requested relief, (2) the respondents must have a clear legal duty to perform the requested relief and (3) there must be no adequate remedy at law. Additionally, although mandamus may be used to compel a court to exercise judgment or to discharge a function, it may not control judicial discretion, even if that discretion is grossly abused. State ex rel. Ney v. Niehaus (1987),33 Ohio St.3d 118, 515 N.E.2d 914. Furthermore, mandamus is not a substitute for appeal. State ex rel. Keenan v. Calabrese (1994),69 Ohio St.3d 176, 631 N.E.2d 119; State ex rel. Daggett v. Gessman
(1973), 34 Ohio St.2d 55, 295 N.E.2d 659; and State ex rel. Pressley v.Industrial Commission of Ohio (1967), 11 Ohio St.2d 141, 228 N.E.2d 631, paragraph three of the syllabus. Thus, mandamus does not lie to correct errors and procedural irregularities in the course of a case. State exrel. Tommie Jerninghan v. Judge Patricia Gaughan (Sept. 26, 1994), Cuyahoga App. No. 67787. Furthermore, if the relator had an adequate remedy, regardless of whether it was used, relief in mandamus is precluded. State ex rel. Tran v. McGrath, 78 Ohio St.3d 45,1997-Ohio-245, 676 N.E.2d 108 and State ex rel. Boardwalk ShoppingCenter, Inc. v. Court of Appeals for Cuyahoga County (1990),56 Ohio St.3d 33, 564 N.E.2d 86. Moreover, mandamus is an extraordinary remedy which is to be exercised with caution and only when the right is clear. It should not issue in doubtful cases. State ex rel. Taylor v.Glasser (1977), 50 Ohio St.2d 165, 364 N.E.2d 1; State ex rel. Shafer v.Ohio Turnpike Commission (1953), 159 Ohio St. 581, 113 N.E.2d 14; Stateex rel. Connole v. Cleveland Board of Education (1993), 87 Ohio App.3d 43,621 N.E.2d 850; and State ex rel. Dayton-Oakwood Press v. Dissinger
(1940), 32 Ohio Law Abs. 308.
 {¶ 3} Although mandamus should be used with caution, the court does have discretion in issuing it. In paragraph seven of its syllabus inPressley, the court ruled that "in considering the allowance or denial of the writ of mandamus on the merits, [the court] will exercise sound, legal and judicial discretion based upon all the facts and circumstances in the individual case and the justice to be done." The court elaborated that in exercising that discretion the court should consider "the exigency which calls for the exercise of such discretion, the nature and extent of the wrong or injury which would follow a refusal of the writ, and other facts which have a bearing on the particular case. * * * Among the facts and circumstances which the court will consider are the applicant's rights, the interests of third persons, the importance or unimportance of the case, the applicant's conduct, the equity and justice of the relator's case, public policy and the public's interest, whether the performance of the act by the respondent would give the relator any effective relief, and whether such act would be impossible, illegal, or useless." 11 Ohio St.2d at 161-162. State ex rel. Bennett v. Lime
(1978), 55 Ohio St.2d 62, 378 N.E.2d 152; State ex rel. Dollison v.Reddy (1978), 55 Ohio St.2d 59, 378 N.E.2d 150; and State ex rel. Mettlerv. Commissioners of Athens County (1941), 139 Ohio St. 86, 38 N.E.2d 393.
 {¶ 4} Jackson's first claim seeks to expunge the March 14, 2001 journal entry which states as follows: "This is a nunc pro tunc entry. Defendant indigent. Counsel Charles DeGross assigned." In the underlying case the Grand Jury indicted Jackson for kidnapping, aggravated robbery and two counts of felonious assault, all with repeat violent offender specifications and notice of prior conviction. At his arraignment on October 20, 2000, Jackson stated he was indigent and insisted on pleading not guilty by reason of insanity. During the ensuing dialogue the arraignment judge stated that he would appoint counsel for Jackson. However, the court did not journalize the appointment in the October 20, 2000 arraignment journal entry.
 {¶ 5} Thus, Jackson argues that the court did not really appoint an attorney for him, that he was without counsel throughout the proceedings in the underlying case, and that the March 14, 2001 nunc pro tunc entry is a sham legal proceeding without any foundation in truth or reality. Accordingly, he urges that mandamus should issue to strike that entry.
 {¶ 6} However, the record in the underlying case refutes Jackson's claims. It shows that on October 23, 2000, Charles DeGross filed a discovery motion on behalf of Jackson. On November 14, 2000, the trial court in its journal entry ordering a psychiatric examination for Jackson, recognized Charles DeGross as his lawyer. When Jackson pled guilty to the indictment in February 2001, the court in its journal entry noted Jackson appeared in court with his counsel, Charles DeGross. DeGross also submitted a fee bill on February 16, 2001, and when the court allowed a $1,000 fee, it also issued a nunc pro tunc entry recognizing that DeGross had been appointed as Jackson's attorney. Thus, the nunc pro tunc entry reflected that the court had appointed DeGross as Jackson's lawyer, and this court will not issue a writ of mandamus to expunge that entry.
 {¶ 7} Jackson's second claim for relief is that the November 30, 2000 journal entry in the underlying case should be corrected to show that he never requested a continuance in that case. The subject journal entry reads as follows: "Psychiatric hearing is continued at defendant's request. Oral motion by defendant for independent psychiatric evaluation by Dr. James Karpowich is granted. Doctor to inform the court when the evaluation is completed."
 {¶ 8} The record reveals that during the pendency of the underlying case, Jackson also faced charges in Case No. CR-391306 for kidnapping, aggravated robbery, and felonious assault, and in Case No. CR-395790 for escape. These matters had been assigned for disposition to Judge Brian Corrigan. On November 21, 2000, Judge Corrigan conducted a hearing for the purpose of reviewing the results of a competency evaluation. The judge announced at the beginning of that hearing that all three of Jackson's cases were before the court. Jackson appeared with counsel, Charles Morgan, who represented him in CR-391306. Neither DeGross nor George Mineff, who represented him in CR-395790, were present at that time. Morgan requested an independent psychiatric examination, which the court granted and journalized in all three cases.
 {¶ 9} Jackson now argues that because Morgan requested the examination and his other attorneys were not present, the continuance should only apply to CR-391306. Jackson asserts that an order continuing the underlying case had no basis in truth or reality, constitutes a sham legal proceeding, and he urges, mandamus will lie to correct it.
 {¶ 10} The issue here concerns whether the court properly granted Jackson's motion for an independent psychiatric examination in CR-391306 and continued the psychiatric hearing in the underlying case until those results had been made available. Here, Jackson had claimed insanity, and the initial psychiatric report had stated that the defendant was sane at the time of the offenses and competent to stand trial. The request for an independent examination could have affected the court's ruling with respect to those findings. Jackson cites no authority for the proposition that the trial judge could not properly issue an order continuing his hearing under these circumstances. Proceeding to trial without results of the independent examination would have led to obvious problems.
 {¶ 11} Mandamus does not lie because Jackson has no right to have the entries "corrected" as he now requests. He pled guilty to the indictment in this case and thereby waived his rights relating to speedy trial and the right to counsel. See State v. Theodore Jackson, Cuyahoga App. No. 80299, 2002-Ohio-2711; State v. Fore (1969), 18 Ohio App.2d 264;State v. Kelley (1991), 57 Ohio St.3d 127, 566 N.E.2d 658; and Village ofMontpelier v. Greeno (1986), 25 Ohio St.3d 170, 495 N.E.2d 581. Furthermore, to the extent that he sought to establish a lack of jurisdiction pursuant to R.C. 2941.401, he also had an adequate remedy at law through appeal; the issue of the continuance could also have been raised on appeal, and the possibility of an adequate remedy at law precludes the issuance of a writ of mandamus.
 {¶ 12} In his mandamus petition, Jackson also claims that he has repeatedly moved the respondents to correct the journal entries, but they have not done so. Arguably, this states a claim in mandamus to compel the respondents to rule on these outstanding motions. A review of the docket in the underlying case reveals that on September 27, 2001, Jackson filed a "Motion for court order of records"; on November 14, 2001, he filed a "Motion for reconsideration and relief after judgment"; on February 2, 2002, he filed a "Motion to correct the record nunc pro tunc"; and on February 4, 2002, he filed still other motions for correction of the record. Thereafter, on February 5, 2002, the court issued orders denying these motions. Thus, to the extent that Jackson's mandamus petition seeks a writ of mandamus to compel resolutions of those motions, the claim is moot.
 {¶ 13} Subsequently, on June 6, 2002, Jackson filed a "Motion to make the record speak the truth," and on June 28, 2002, he filed a "Motion for correction of disputed journal entries criminal docket sheet via common law." These are redundant motions in different verbiage seeking the relief which the court has already denied. Jackson has a remedy by way of appeal.
 {¶ 14} Accordingly, Jackson's motion for summary judgment is denied. Respondents' motion for summary judgment is granted, and the application for a writ of mandamus is therefore denied. Costs assessed against relator. The clerk is directed to serve the parties with notice of this judgment and its date of entry upon the journal. See Civ.R. 58(B).
Writ denied.
JAMES J. SWEENEY, P.J., and COLLEEN CONWAY COONEY, J., CONCUR.